IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

|  |  |  |
|---|---|---|
| **VIVINT, LLC,** | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| **v.** | § | **MO:25-CV-00332-DC-RCG** |
| | § | |
| | § | |
| **PREMIER AESTHETIX** | § | |
| **INSTALLATION AND** | § | |
| **CONSTRUCTION LLC,** | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Plaintiff Vivint, LLC's ("Plaintiff") Motion for Default Judgment. (Doc. 10).[1] This matter is before the undersigned United States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the Court **RECOMMENDS** Plaintiff's Motion for Default Judgment be **GRANTED**. (Doc. 10).

### I.    BACKGROUND

This is a breach of contract case. On July 25, 2025, Plaintiff filed its Complaint against Defendant Premier Aesthetix Installation and Construction LLC ("Defendant"). (Doc. 1). The relevant factual allegations are as follows. Plaintiff and Defendant entered into a Solar Energy Sales and Dealer Installation Agreement (the "Agreement") on or about March 23, 2023. *Id.* at 3. Under the Agreement, Plaintiff agreed to market and sell residential photovoltaic solar systems while Defendant agreed to obtain governmental authorizations for, install, monitor, maintain, service, and warrant such systems. *Id.* The Agreement requires Defendant, within one week of completing installation services for a system, to send Plaintiff a bill of lading for the completed

---

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

work order and to pay Plaintiff a commission for the services based on the payment terms in the Agreement, and further provides that Plaintiff may charge interest on past-due payments at the lesser of 1.5% per month or the maximum rate allowed by law. *Id.* According to Plaintiff, Defendant breached its payment obligations under the Agreement, having confirmed by email on December 15, 2023, that it owed Plaintiff $450,725.97 in unpaid commissions, of which only $15,000 has been paid, leaving a balance of $435,725.97. *Id.* at 4. Plaintiff has repeatedly communicated Defendant's outstanding payment obligations, including via multiple emails in January 2024 and demand letters in January, October, and December 2024. *Id.* Plaintiff avers Defendant has not offered any legally valid basis for nonpayment and remains in material, ongoing breach of the Agreement. *Id.*

Summons in this case was issued as to Defendant on July 31, 2025. (Doc. 4). On September 4, 2025, Plaintiff filed executed summons as to Defendant. (Doc. 5). Plaintiff's proof of service shows Defendant was served through its registered agent at 9905 South Pennsylvania Avenue, Oklahoma City, Oklahoma 73159, on September 2, 2025. *Id*. On October 27, 2025, the Court issued an Order for Defendant to show cause as to why it had not filed a responsive pleading in this case. (Doc. 7). To date, Defendant has failed to answer Plaintiff's Complaint or otherwise make an appearance in this lawsuit. On October 22, 2025, Plaintiff filed a Motion for Clerk's Entry of Default. (Doc. 6). On November 18, 2025, the Clerk of Court entered default against Defendant. (Doc. 9). On January 15, 2026, Plaintiff filed the instant Motion for Default Judgment. (Doc. 10).

Plaintiff brings a breach of contract claim against Defendant and seeks a money judgment in the amount of $727,001.31, consisting of (1) $499,106.48 in unpaid principal; (2) $208,087.43 in contractual interest; and (3) $19,807.40 in attorney fees, as well as pre- and post-judgment

2

interest. (Docs. 10, 13)[2]. A hearing was held on the instant Motion for Default Judgment on March 26, 2026. (Doc. 13). Accordingly, this matter is now ripe for disposition.

## II.    LEGAL STANDARD

After entry of default and upon a motion by the plaintiff, Federal Rule of Civil Procedure 55 authorizes the Court to enter a default judgment against a defendant who fails to plead or otherwise defend the suit. FED. R. CIV. P. 55(b). However, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Savs. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Accordingly, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Instead, the district court "has the discretion to decline to enter a default judgment." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In determining whether to enter a default judgment, courts utilize a three-part test. *See United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). First, courts consider whether the entry of default judgment is procedurally warranted. *Id*. The factors relevant to this inquiry include:

> (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893. Second, courts assess the substantive merits of the plaintiff's claims, determining whether the plaintiff set forth sufficient facts to establish his entitlement to relief.

---

3. Plaintiff's Motion for Default Judgment listed total damages of $599,124.61, consisting of a principal balance of $435,725.97 and contractual interest of $163,398.64. (Doc. 10 at 3). At the hearing, however, Plaintiff clarified that the correct amounts are $499,106.48 in principal and $208,087.43 in accrued interest, for a total of $707,193.91, exclusive of attorneys fees and costs. (Doc. 13).

3

*See 1998 Freightliner*, 548 F. Supp. 2d at 384. In doing so, courts assume that, due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Third, courts determine what form of relief, if any, the plaintiff should receive in the case. *Id.*; *1998 Freightliner*, 548 F. Supp. 2d at 384. Generally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

### III.    DISCUSSION

Applying the three-part analysis detailed above, the Court finds Plaintiff is entitled to a default judgment.

### A.  Default Judgment is Procedurally Warranted

In light of the six *Lindsey* factors enumerated above, the Court finds that default judgment is procedurally warranted. First, Defendant has not filed any responsive pleadings or otherwise appeared in this case. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."). Second, Defendant's total failure to respond has brought the adversarial process to a halt, effectively prejudicing Plaintiff's interests. *Lindsey*, 161 F.3d at 893. Third, the grounds for default are "clearly established" since over the course of this case, Defendant has not responded to the summons and Complaint, the Court's Show Cause Order, the Entry of Default, or Plaintiff's Motion for Default Judgment. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding default judgment is appropriate if defendants are totally unresponsive and the failure to respond

4

is plainly willful, as reflected by the parties' failure to respond either to the summons and complaint, the entry of default, or the motion for default judgment).

Fourth, there is no evidence before the Court indicating Defendant's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Defendant had nearly six months to respond to Plaintiff's claims or otherwise appear in this matter. (Doc. 5). Consequently, any purported harshness of a default judgment is mitigated by Defendant's inaction for this lengthy time period. *United States v. Rod Riordan Inc.*, No. 17-CV-071, 2018 WL 2392559, at *3 (W.D. Tex. May 25, 2018). Finally, the Court is not aware of any facts that give rise to "good cause" to set aside the default if challenged by Defendant. *Lindsey*, 161 F.3d at 893. Therefore, the Court finds default judgment is procedurally warranted under these circumstances.

## B.  Default Judgment is Substantively Warranted

Due to the entry of default, Defendant is deemed to have admitted the allegations outlined in Plaintiff's Complaint. *See Nishimatsu Constr.*, 515 F.2d at 1206. Even so, the Court must review the pleadings to determine whether Plaintiff pleaded a sufficient basis for its claims to relief. *See id*. Federal Rule of Civil Procedure 8 guides this analysis:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (internal citations and footnote omitted) (alteration in original). This "low threshold" is less rigorous than that under Rule 12(b)(6). *Id.*

Plaintiff contends the allegations in its Complaint, taken as true, establish the elements of a breach of contract claim. (Docs. 1, 10). Because this Court sits in diversity, it applies the choice-of-law rules of the forum state—here, Texas. *Mayo v. Hartford Life Ins.*, 354 F.3d 400, 403 (5th Cir. 2004). Under Texas choice-of-law principles, "contractual choice-of-law provisions are typically enforced." *Access Telecomm., Inc. v. MCI Telcomms. Corp.*, 197 F.3d 694, 705 (5th Cir. 1999) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677–78 (Tex. 1990)). Accordingly, because the Agreement provides that it is governed by Utah law (Doc. 12-3 at 10), the Court applies the substantive law of Utah to evaluate the sufficiency of the Complaint. Under Utah law, a breach of contract claim requires (1) the existence of a contract; (2) performance of the contract by the party asserting the claim; (3) breach of the contract by the other party; and (4) damages. *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1151 (10th Cir. 2013) (citing *Bair v. Axiom Design, LLC*, 20 P.3d 388, 392 (Utah 2001)).

Here, Plaintiff alleges the Parties entered into an Agreement under which Plaintiff would market and sell residential photovoltaic solar systems, and Defendant would provide, obtain governmental authorization for, monitor, install, maintain, service, and warrant those systems. (Doc. 1 at 3). Defendant further agreed that, within one week of completing the installation services for a system, it would send Plaintiff a bill of lading for the completed work order and pay Plaintiff a commission for its services. *Id.* The Complaint alleges Defendant breached its payment obligations under the Agreement when, in a December 15, 2023, email, it confirmed owing Plaintiff $450,725.97 in unpaid solar commissions but failed to pay that amount. *Id.* at 4.

6

Although Defendant remitted $15,000.00, it has not provided any legally valid basis for refusing to pay the remaining amounts due and owing under the Agreement. *Id.* Plaintiff further alleges that it has suffered damages in excess of $435,725.97 as a result of Defendant's breach. *Id.* at 5. Accepting these well-pleaded allegations as true, the Complaint, together with Plaintiff's Motion for Default Judgment and supporting exhibits, states a claim for breach of contract.

### C. Plaintiff's Right to Relief

#### 1. Money Judgment

As previously stated, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp.*, 605 F.2d at 857. On March 27, 2026, pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court held an evidentiary hearing on the issue of remedy. (Doc. 13). Plaintiff seeks a money judgment, including attorney fees and costs, and pre- and post-judgment interest, arising from Defendant's breach of the Agreement. (Docs. 10, 13) At the hearing, Josh Smith, Plaintiff's Director of Indirect and Solar, testified and affirmed the authenticity of the Agreement and the facts alleged in the Complaint. (Docs. 12-3, 13). Plaintiff's counsel also introduced multiple exhibits demonstrating Defendant was repeatedly placed on notice of the outstanding balance and breach, and Defendant never responded to or disputed those notices. (Docs. 12-1, 12-2, 13). Finally, Plaintiff's counsel and Mr. Smith stated the amount due and owing, exclusive of attorney fees and costs, totals $707,193.91 as of March 26, 2026. (Doc. 13). Thus, Plaintiff is entitled to a money judgment in the amount of $707,193.91, representing the unpaid principal and accrued contractual interest, plus reasonable attorney fees and costs, and post-judgment interest, which the Court discusses in more detail below.

### 2.  Interest on the Judgment

Post-judgment interest is allowed on any money judgment in a civil case recovered in a district court. 28 U.S.C. § 1961. Parties are free to stipulate a rate of interest different from the one prescribed in § 1961, as long as the stipulated rate is consistent with state usury and other applicable laws. *Hymel v UNC, Inc.*, 994 F.2d 260, 266 (5th Cir. 1993). In this case, the Agreement provides for interest "of the lesser of 1.5% per month and the maximum rate legally allowed on past due payments." (Doc. 12-3 at 4). Under Utah law, "parties to a . . . contract may agree upon any rate of interest for the contract, including a contract for services, a loan or forbearance of any money, goods, or services, or a claim for breach of contract." UTAH CODE § 15-1-1. The Parties' Agreement therefore validly sets a 1.5% per month contractual interest rate on past-due amounts. Utah law further provides that "a judgment rendered on a lawful contract shall conform to the contract and shall bear the interest agreed upon by the parties." *Id.* at § 15-1-4. Because this is a judgment rendered on a lawful contract, the Court will award post-judgment interest at the 1.5% per month rate specified in the Agreement.

The recovery of pre-judgment interest is a substantive question controlled by state law. *Wood v. Armco, Inc.*, 814 F.2d 211, 213 n.2 (5th Cir. 1987). As discussed above, the Agreement at issue in this case is governed by Utah law. (*See* Docs. 1 at 3; 12-3 at 10).Utah law permits parties to agree upon any rate of interest for a contract, including a contract for services or a claim for breach of contract. UTAH CODE § 15-1-1. Pre-judgment interest may be recovered "where the damage is complete . . . the loss ha[s] been fixed as of a definite time and the amount of the loss can be calculated with mathematical accuracy in accordance with well-established rules of damages." *Cross Marine Projects, Inc. v. Morton Salt, Inc.*, 396 F. Supp. 3d 1037, 1042 (D. Utah 2019) (internal quotations and citations omitted). Here, Plaintiff's damages consist of

unpaid invoices issued on specific dates in fixed amounts, and the Agreement's interest provision applies mechanically to those sums from the dates they became due, so the amount of Plaintiff's loss is readily ascertainable by using the contractual 1.5% per month rate and the dates of nonpayment. (Docs. 10, 12-3 at 4). Accordingly, Plaintiff may recover pre-judgment interest at the 1.5% per month rate specified in the Agreement and post-judgment interest at that same contractual rate pursuant to Utah Code Ann. §§ 15-1-1, 15-1-4.

### 3.   Attorney Fees

Finally, in its Motion for Default Judgment, Plaintiff requests attorney fees and costs. (Doc. 10 at 3). Texas treats recovery of attorney fees as substantive law. *Mut. Concepts, Inc. v. First Nat. Bank of Omaha*, 495 F. App'x 514, 517 (5th Cir. 2012). Accordingly, "the award of attorney's fees in a diversity case depends on the law of the state whose rules govern the substantive claims." *Kucel v. Heller*, 813 F.2d 67, 73 (5th Cir. 1987) (internal citations omitted). As discussed above, this Court has determined, applying Texas choice-of-law principles, that Utah substantive law governs the breach of contract claim. The Court therefore looks to Utah substantive law to determine whether it provides for an award of attorney fees.

"Under Utah law, if the provisions of a contract allow for the recovery of attorneys' fees, then a court may award costs and attorneys' fees to either party that prevails in a civil action based on the contract." *2010-1 RADC/CADC Venture, LLC v. JD Inv. Enters.*, No. 09-CV-917, 2012 WL 5903998, at *4 (D. Utah Nov. 26, 2012) (internal quotations and citations omitted). Here, the Agreement explicitly states "[t]he prevailing Party in any . . . legal proceeding related to the Agreement may receive as an award its reasonable attorneys' fee[s]." (Doc. 12-3 at 9–10). Further, Utah Courts consider the following factors in determining the reasonableness of attorneys' fees: (1) what legal work was actually performed; (2) how much of the work

performed was reasonably necessary to adequately prosecute the matter; (3) whether the attorney's billing rate consistent with the rates customarily charged in the locality for similar services; and (4) whether any additional circumstances warrant consideration of other factors. *Bank of the W. v. Millennia Inv. Corp.*, No. 11-CV-465, 2012 WL 2256926, at *2 (D. Utah June 15, 2012) (citing *Dixie State Bank v. Bracken*, 764 P.2d 985, 990 (Utah 1988)). Utah also employs a lodestar-type analysis—multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate—as a useful framework for assessing these factors. *See, e.g.*, *Barker v. Utah Public Service Comm'n*, 970 P.2d 702, 708 (Utah 1998) ("As courts often do, we will use the lodestar method in considering the attorney fees in this case.").

In conjunction with Plaintiff's Motion for Default Judgment, Plaintiff's counsel, Forrest Colby Roberts, provided an affidavit regarding attorney fees. (Doc. 10-1). According to the affidavit submitted, two partners, a managing associate, a senior associate, and a paralegal performed a collective 49.9 hours on this case and billed hourly rates of $394–$470, $470, $470, $300–$470, and $230, respectively. *Id*. at 2–3. Having reviewed Mr. Roberts's affidavit, the Court finds the hours expended were reasonably necessary to prosecute this action and were adequately documented. *Id*. The Court further finds that the hourly rates charged are consistent with those customarily charged for similar legal services in the relevant market. Additionally, any exceptional circumstances that would warrant an upward or downward adjustment do not appear to be present. Accordingly, the Court concludes Plaintiff's requested fees are reasonable and should be awarded. Thus, Plaintiff should be awarded $19,807.40 in reasonable attorneys' fees from Defendant.

## IV.   RECOMMENDATION

For the aforementioned reasons, the Court **RECOMMENDS** Plaintiff's Motion for Default Judgment be **GRANTED**. (Doc. 10). Further, the Court **RECOMMENDS** a final judgment be entered against Defendant as follows:

1. Defendant Premier Aesthetix Installation and Construction LLC is liable to Plaintiff Vivint, LLC for breach of contract.

2. Plaintiff is awarded $499,106.48 in unpaid principal and $208,087.43 in contractual interest through March 26, 2026, for a total of $707,193.91.

3. Plaintiff is awarded $19,807.40 in reasonable attorney fees and all taxable costs incurred in this action.

4. Post-judgment interest shall accrue from the date of this Judgment at the contractual rate of 1.5% per month.

5. Plaintiff is entitled to any other relief to which it may be entitled under the Agreement or applicable law.

SIGNED this 6th day of April, 2026.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

11

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).